**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2282
_____

OWEN DOVOVAN JOHNSON,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-186-854)
Immigration Judge:  Honorable Walter A. Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 20, 2015
Before:  FUENTES, VANASKIE and SCIRICA, Circuit Judges

(Filed: December 14, 2015)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Owen Donovan Johnson, a native and citizen of Jamaica, petitions for review of the Board of Immigration Appeals' final order of removal. For the following reasons, we will deny the petition for review.

Johnson was admitted to the United States in 1990 as a nonimmigrant visitor for pleasure and, in 2006, adjusted his status to lawful permanent resident (LPR). In 2012, a jury in the United States District Court for the Southern District of New York found Johnson guilty of both counts of a two-count indictment, charging him with conspiracy to commit bank fraud and wire fraud, 18 U.S.C. § 1349, and bank fraud, 18 U.S.C. § 1344. Based on that conviction, the Government charged Johnson as removable under Immigration and Nationality Act (INA) § 237(a)(2)(A)(iii) [8 U.S.C. § 1227(a)(2)(A)(iii)] because he had committed an aggravated felony as defined in INA § 101(a)(43)(M) [8 U.S.C. § 1101(a)(43)(M)] (classifying as an aggravated felony any offense that involves fraud or deceit in which the loss to the victim exceeds $10,000) and INA § 101(a)(43)(U) [8 U.S.C. § 1101(a)(43)(U)] (providing that "an attempt or conspiracy to commit" another aggravated felony constitutes an aggravated felony).

An Immigration Judge (IJ) concluded that Johnson was removable as charged. Johnson appealed, arguing that the Government could not demonstrate by clear and convincing evidence that § 101(a)(43)(M)'s $10,000 loss threshold had been met. The BIA disagreed, noting that the presentence investigation report (PSR) indicated that Johnson's involvement in a mortgage fraud scheme resulted in a loss amount over $3 million. The Board also rejected Johnson's claim that a remand was warranted so that he

could apply for a waiver of inadmissibility under INA § 212(h) [8 U.S.C. § 1182(h)]. Johnson filed a timely petition for review.

We generally lack jurisdiction to review a final order of removal against an alien, like Johnson, who is removable for having committed an aggravated felony. See INA § 242(a)(2)(C) [8 U.S.C. § 1252(a)(2)(C)]. We retain jurisdiction, however, to review constitutional claims, "pure questions of law," and "issues of application of law to fact, where the facts are undisputed and not the subject of challenge." Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005); see also INA § 242(a)(2)(D) [8 U.S.C. § 1252(a)(2)(D)]. Johnson raises questions of law, namely, whether his conviction is an aggravated felony and whether he is statutorily eligible for a § 212(h) waiver. See Jeune v. Att'y Gen., 476 F.3d 199, 201 (3d Cir. 2007); Poveda v. Att'y Gen., 692 F.3d 1168, 1172 (11th Cir. 2012). Therefore, we decline the Government's invitation to dismiss the petition for review for lack of jurisdiction.

Johnson concedes that his conviction involved fraud, but he argues that the Government failed to demonstrate that his offense caused a loss of greater than $10,000 to a victim or victims. We disagree. Pursuant to Nijhawan v. Holder, 557 U.S. 29, 40 (2009), the agency and courts considering whether a conviction is an aggravated felony under § 101(a)(43)(M) should apply a "circumstance-specific" approach, rather than a categorical approach, to determine whether the alien's crime involved a loss to the victim over $10,000. The Supreme Court stated that "the loss must be tied to the specific counts covered by the conviction." Id. at 42. In Nijhawan, the alien had stipulated at sentencing that the loss exceeded $100 million. The Supreme Court held that it was not unfair for

3

the IJ to refer to sentencing-related material in determining the loss amount for purposes of § 101(a)(43)(M). Id. at 43. Indeed, we have held that the BIA's reliance on a PSR in conducting the circumstance-specific approach does not render a removal proceeding fundamentally unfair. See Kaplun v. Att'y Gen., 602 F.3d 260, 266 (3d Cir. 2010).

Here, the record clearly and convincingly supports the BIA's conclusion that the loss to the victims exceeded $10,000, and that that loss was tied to the specific counts covered by the conviction. According to the PSR, Johnson "committed mortgage fraud involving at least 22 properties, including the nine properties charged in the indictment, plus an additional 13 properties that constitute relevant conduct. . . . [T]he Government calculated the loss amount based on an estimate using 30 percent of the total mortgage price of the 22 properties, which was approximately $3,097,496.40." We recognize that the $10,000 threshold cannot be satisfied with losses related to the 13 properties constituting only "unconvicted" relevant conduct. See Alaka v. Att'y Gen., 456 F.3d 88, 106 (3d Cir. 2006) (noting that the plain language of the statute "forecloses inclusion of losses stemming from unconvicted offenses." (quoting Knutsen v. Gonzales, 429 F.3d 733, 736-37 (7th Cir. 2005))). But the PSR indicates that several of the nine properties identified in Count One of the indictment involved losses exceeding $10,000. See Singh v. Att'y Gen., 677 F.3d 503, 512 (3d Cir. 2012) (indicating that circumstance-specific approach properly includes examination of the indictment). For example, Johnson was convicted of using a fraudulent mortgage application to obtain a loan totaling approximately $609,076 to purchase property located at 254A Saratoga Avenue, Brooklyn, New York. Using the "30 percent of the total mortgage price" calculation that

the Government employed, the actual loss from this single transaction equaled approximately $183,000, well above the $10,000 threshold.[1] See id. at 510 (holding that the Government must prove actual loss, rather than intended or potential loss).

Johnson also alleges that the Board erred in concluding that he is not statutorily eligible for relief under INA § 212(h). That section provides the Attorney General with discretion to waive inadmissibility if the alien establishes that his departure would cause hardship to a spouse, parent, son, or daughter who is a United States citizen or lawful permanent resident.[2] INA § 212(h)(1)(B) [8 U.S.C. § 1182(h)(1)(B)]. Notably, however, a lawful permanent resident present in the United States may obtain a § 212(h) waiver "only if he is an applicant for admission or assimilated to the position of an applicant for

---

[1] We reject Johnson's claim that the loss amount did not exceed $10,000 because the Judgment did not order restitution. Notably, the Judgment did direct Johnson to forfeit almost $5 million in United States currency, which the PSR identified as "property . . . involved in the offense . . . for which he is jointly and severally liable." There is also no merit to Johnson's assertion that no victims were established as a result of his criminal offense. The PSR indicated that "the victims in this case were Nationstar Mortgage and Citimortgage Inc; however the loans guaranteed by these lenders were bought by other lenders." Although the identity of the "other lenders" was not known at the time of sentencing, Johnson has not convincingly alleged that the lenders who purchased the loans are not victims. Finally, Johnson's assertion in his Reply Brief that he is currently challenging his conviction under 28 U.S.C. § 2255 does not affect the finality of that conviction for immigration purposes. See Orabi v. Att'y Gen., 738 F.3d 535, 542 (3d Cir. 2014)

[2] Section 212(h) also provides that "an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence," who is later convicted of an aggravated felony, is statutorily ineligible for a waiver of inadmissibility. 8 U.S.C. § 1182(h). This aggravated felony bar does not apply to Johnson, however, because he was admitted on a visitor's visa and only later adjusted his status to that of an LPR. Hanif v. Att'y Gen., 694 F.3d 479, 487 (3d Cir. 2012) (holding that § 212(h) precludes a waiver only for those persons who, at the time they lawfully entered into the United States, had attained the status of lawful permanent resident).

5

admission by applying for an adjustment of status." Poveda, 692 F.3d at 1177; see also Cabral v. Holder, 632 F.3d 886, 891 (5th Cir. 2011) ("[A]liens who are already in the United States must apply for an adjustment of status under 8 U.S.C. § 1255; upon application, the applicant is assimilated to the position of an alien outside the United States seeking entry as an immigrant.") (internal quotation marks omitted). Indeed, "the statute does not provide for an alien in removal proceedings to obtain a 'stand alone' waiver without an application for adjustment of status." In re Rivas, 26 I. & N. Dec. 130, 132-33 (BIA 2013); see also 8 C.F.R. § 1245.1(f) ("an application [for adjustment of status] shall be the sole method of requesting the exercise of discretion under sections 212(g), (h), (i), and (k) of the Act, as they relate to the inadmissibility of an alien in the United States.").

Johnson did not apply for adjustment of status and essentially faults the IJ for failing to advise him of the opportunity to do so. Cf. Bonhometre v. Gonzales, 414 F.3d 442, 448 (3d Cir. 2005) (noting BIA authority for the proposition that "[a]n IJ has a duty to inform aliens of potential forms of relief for which they are apparently eligible . . ."). But any error by the IJ was harmless because Johnson's purported basis for seeking adjustment – an I-130 Petition for Alien Relative – was not approvable. See Coraggioso v. Ashcroft, 355 F.3d 730, 733 (3d Cir. 2004) (providing that to be prima facie eligible for adjustment of status, an alien must have an immediately available visa). In particular, although Johnson sought to rely on an I-130 petition filed by his 27 year-old son, who is an LPR, there is currently no corresponding immigrant visa category for the parent of a lawful permanent resident. See INA § 203(a) [8 U.S.C. § 1153(a)]. Johnson also has a

6

12 year-old son who is a United States citizen, but that son cannot petition on Johnson's behalf until he turns 21 years old. <u>See</u> INA § 201(b)(2)(A)(i) [8 U.S.C. § 1151(b)(2)(A)(i)].

For the foregoing reasons, we will deny the petition for review.